Pee Curiam :
Plaintiff, a non-veteran formerly employed by the Federal Aviation Agency, claims that she was unlawfully removed on December 29,1961, on a charge pf making *8 malicious statements concerning other employees of the Agency. She does not contest, in this court, that she typed and sent anonymous letters to an .official of the Agency stating that a fellow employee “can not be trusted, lies all the time”, “holds personal grudges”, is “rotten” and “a professional liar”, and a similar anonymous letter to the wife of an.oth.er Agency official stating that the recipient’s husband “carries on” and “makes a fool of himself” with a female fellow employee who is “nothing but a cheap, brazen hussy” “only using him to get ahead.”
Plaintiff’s first contention is that she could not be disciplined .or removed on this charge unless the agency determined that the statements in her letters were in fact false. We reject this argument. The sending of anonymous letters of this type to superiors, to fellow employees, and certainly to the wife of a fellow employee, is, in itself, good cause for removal under the Lloyd-LaFollette Act, 5 U.S.C. § 652(a), regardless of whether the anonymous accusations, phrased as these were, have any element of truth. These were not ppen or responsible accusations of official misconduct, properly and temperately made to the cognizant persons, but were snide and intemperate name-calling attacks in unsigned letters — one of them to the wife .of a fellow employee plaintiff accused, in effect, of breaking his marriage vows. Such communications have no place, no sanction, and no privilege in federal employment. It promotes the efficiency of the government service to discipline employees using these methods. Cf. Houston v. United States, 156 Ct. Cl., 38, 297 F. 2d 838, cert. denied, 371 U.S. 815 (1962); Harrington v. United States, 161 Ct. Cl. 432 (1963). The Federal Aviation Agency’s Employee’s Handbook permitted removal as a consequence of “making false, vicious, or malicious statements concerning another officer or employee of the Government,” and we cannot say that the Agency abused its discretion in imposing that penalty on plaintiff.
The plaintiff’s second point is that her removal was pr,o-cedurally defective because the employing agency failed to follow the requirements of the Lloyd-LaFollette Act and of its own regulations. , She has no standing to make this c,on- *9 tention because she failed to pursue and exhaust her remedy before the Civil Service Commission; exhaustion of this remedy, to the extent that it is available, is a normal prerequisite to suit in this court. Martilla v. United States, 118 Ct. Cl. 177 (1950); Adler v. United States, 134 Ct. Cl. 200, 146 F. Supp. 956, cert denied, 352 U.S. 894 (1956) ; Morelli v. United States, 161 Ct. Cl. 44 (1963). Commission review of those procedural errors which plaintiff now asserts was available to her without any loss of other rights. These alleged errors all occurred before she was actually removed on December 29, 1961; they are said to have occurred in the course of the hearing and investigation by the Agency’s Eastern Eegional Field Board of Grievance Appeal (which considered plaintiff’s appeal from the initial decision upholding the charges, and made a recommendation to the Assistant Administrator) and in the decision by the Assistant Administrator (on December 15,1961) rejecting her appeal.[1] Since the Civil Service Commission’s rules permitted an appeal within ten days after actual removal (i.e., December 29, 1961), plaintiff could readily have sought review of all these claimed errors. The Commission would have scrutinized them. In the case of a non-veteran, like plaintiff, the Commission has long exercised jurisdiction over procedural errors based on the Lloyd-LaFollette Act or on its own regulations ; and by January 1962 the Commission had for some time announced that it would also consider procedural violations of the employing agency’s own regulations. Civil Service Commission Departmental Circular No. 1019 (dated and effective Sept. 18, 1959) (“Enforcement of Agency Procedural Eequirements Governing Adverse Actions”).
Plaintiff’s excuse for not seeking Commission review is that, even after her removal on December 29, 1961, she had pending an appeal from the Assistant Administrator to the Administrator of the Federal Aviation Agency. The latter did not deny her appeal until April 9, 1962 — too late for an appeal to the Commission under its rules. However, there is no indication here, unlike the Morelli case, supra, that a *10 timely appeal to the Commission would have aborted the internal appeal to the Administrator, or vice versa. Both could have been pursued at the same time. The alleged procedural defects on which plaintiff relies all occurred before her removal and could therefore have been presented to the Commission, as well as to the Administrator.
In any event, we find no merit in the charges of procedural irregularity, which focus on the Agency’s failure to inform plaintiff of all the materials considered by the Field Board of Grievance Appeals and the Assistant Administrator, and to confront her with any witnesses against her. The Lloyd-LaFollette Act and the Commission regulations did not give these rights to non-veterans. Culligan v. United States, 107 Ct. Cl. 222 (1946), cert. denied, 330 U.S. 848 (1947); Jordan v. United States, 138 Ct. Cl. 647, 158 F. Supp. 715 (1957); Meyers v. United States, this day decided ante , p. 1. As for the Agency’s own regulations, there was likewise no violation. They did not require that plaintiff be shown all the information bearing on her case or that other witnesses be heard in her presence and be subject to cross-examination. Nevertheless, she had adequate opportunity to present her side. She testified before the Field Board and her counsel saw the documentary evidence showing that she had typed the anonymous letters.[2] There is no reason to believe that the Board failed to make the proper investigation appropriate to this case, nor is there any support for the vague complaint that plaintiff was discharged on grounds other than those specified in the charge against her. Under the regulations she was expressly precluded from seeing the Board’s findings and recommendations (which were designed to advise the Assistant Administrator), but that provision is certainly not enough to ground an inference that the Board and the Assistant Administrator strayed. The written decisions of both the Assistant Administrator and the Administrator indicate that they confined themselves to the charge.
Plaintiff’s motion for summary judgment is denied, and defendant’s cross-motion is granted. The petition is dismissed.

 Tbe initial removal date of October 6, 1961, -was extended, in writing, until after tbe decision of tbe Assistant Administrator.

 There do not appear to have been any live witnesses other than plaintiff.