Arthur R. **GUARRIELLO**

v.

The **UNITED STATES.**

No. 738–71.

United States Court of Claims.

March 16, 1973.

Roger P. Kaplan, Washington, D. C., of record, for plaintiff.

Karen A. Berndt, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, JJ.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This is a civilian pay case in which plaintiff claims entitlement to environmental differential pay for hazardous duty, over and above a 12% annual premium already being received. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1491 (1970). Whether plaintiff is entitled to the additional differential pay is the issue.

We hold he is not so entitled.

The facts in this case are quite simple. Plaintiff, a Wage Grade–12 (WG–12) National Guard Technician employed at a NIKE missile site, already receives 12% premium pay per year. On December 7, 1970, he performed work while

exposed to adverse high winds and chilling conditions for 5 and ¾ hours. Claiming that this duty must be compensated in excess of the 12% premium pay, plaintiff now seeks environmental differential pay. This claim was returned by the Adjutant General[1] without action as a result of an opinion by the Comptroller General of the United States adverse to such recovery.[2]

Plaintiff now comes before this court with the same claim, praying that we enter judgment in his behalf in the total amount of $5.98.[3] Motions for summary judgment have been filed by both parties, there being no genuine issues of material fact.

We hold for the defendant.

Unfortunately for plaintiff in this case, he is beset by unanswerable, statutory problems which surround him on all sides like rocks surrounding a ship in distress. Any way he turns, he can advance his argument just a short distance before it founders. Upon careful screening, the statutes on which he must rely just do not support his position.

In 1968 the National Guard Technicians Act was enacted into law. 32 U.S.C. § 709 (1970). The overall purpose of the statute was to give "federal employee" status to National Guard Technicians. It authorized the appropriate Secretary to prescribe the hours of duty and rates of pay. The statute provides in pertinent part:

> (g)(1) Notwithstanding sections 5544(a) and 6102 of title 5, United States Code, or any other provision of law, the Secretary concerned may, in the case of technicians assigned to perform operational duties at air defense sites—
>
> (A) prescribe the hours of duties;
>
> (B) fix the rates of basic compensation; and
>
> (C) fix the rates of additional compensation;

to reflect unusual tours of duty, irregular additional duty, and work on days that are ordinarily nonworkdays. Additional compensation under this subsection may be fixed on an annual basis and is determined as an appropriate percentage, not in excess of 12 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10 of the General Schedule under section 5332 of title 5, United States Code.

Notwithstanding the above quoted statute, plaintiff contends that pursuant to Federal Personnel Manual Supplement 532–1, Appendix J, he is entitled to an additional hazardous duty pay above the 12% premium.

Appendix J of the Federal Personnel Manual Supplement 532–1 was promulgated by the Civil Service Commission pursuant to the Coordinated Federal Wage System. This system was created to coordinate the pay schedules of all wage grade employees of the federal government. This section of the Personnel Manual sets out environmental differential rates that would be paid to wage grade employees performing hazardous duty. On the face of this regulation it would appear that plaintiff would be entitled to the environmental differential for the undisputed hazardous work that he performed. However, 32 U.S.C. § 709 (g)(1) supersedes this provision.

■ Although the Federal Personnel Manual does provide additional pay for hazardous duty, Congress clearly intended that this should be included in the 12% premium stated in § 709(g)(1). The plain language, "notwithstanding . . . any other provision of law", leaves no doubt that this statute is intended to be the controlling factor regarding pay schedules of National Guard Technicians.

Assuming, *arguendo*, that § 709(g)(1) may be controlling as far as it goes,

---

1. New Jersey Air National Guard.

2. 50 Comp.Gen. 847 (1971).

3. As of December 31, 1972, there were 2,682 air defense technicians in the United States.

plaintiff argues that hazardous duty is not to be included under the 12% maximum because it was not intended to be included in the category of "additional compensation" as it is used in § 709(g)(1).

■ "Additional compensation" is an all comprehensive term. Yet plaintiff argues that the words should be narrowly defined as to mean only compensation for overtime. This court has long recognized that judicial tribunals must be careful in departing from statutory terms. As far as possible, violence should not ordinarily be done to the words chosen by the Congress. Crawford v. United States, 376 F.2d 266, 272, 179 Ct.Cl. 128, 138 (1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968). Plaintiff's attempt to deviate from the normal meaning of "additional compensation" would do just that.

It would seem that when a statute provides for *basic* compensation, then separately provides for *additional* compensation, *notwithstanding any provision of law*, it has, so to speak, "covered the waterfront" *in re* compensation. And to make plaintiff's position even more untenable, 32 U.S.C. § 709(g)(1) even goes so far as to single out technicians assigned to perform operational duties at air defense sites.

Plaintiff argues further that, should defendant's position be successful, discrimination and gross inequities would result. He points out that a technician on hazardous duty would get a 12% premium and a technician performing normal, non-hazardous duty would also receive 12%. This, he claims, is unfair and inequitable.

We concede that plaintiff may well be right. There may be inequities in the rates of pay for hazardous versus non-hazardous duty for air defense technicians. But under 32 U.S.C. § 709(g)(1) the remedy, correctly, does not lie within the power of the judiciary; it lies with Congress. To achieve what he desires, plaintiff must obtain appropriate statutory amendments from the only body so empowered . . . . Congress.

As an additional argument plaintiff contends that since hazardous duty is not specifically listed in the statute as are unusual tours of duty, irregular additional duty, and work on the days that are ordinarily nonworkdays, it is not intended to be included in the term "additional compensation". The mentioning of a few specific examples of types of duty cannot be read to preclude additional specific types of duty. Indeed, the very words "additional compensation" in the same sentence are clearly so broad as to encompass other types of duties. Similarly when plaintiff argues that 32 U.S.C. § 709(g)(1) does not *specify* that environmental differential pay is included in the 12% premium, he ignores the normal meaning of the words of the statute. Plaintiff has the burden of persuading the court that the language means something other than what normal usage gives it. Williams v. United States, 117 F.Supp. 189, 127 Ct.Cl. 167, 168 (1953).

■ Finally, plaintiff urges that the legislative history of 32 U.S.C. § 709(g)(1) in no way discusses "hazardous duty".[4] He infers that if the 12% annual premium pay were meant to cover hazardous duty, it somehow had to be discussed in the legislative history. Clearly, this argument is untenable. This court has held that it is "the statutes themselves which must be construed, and legislative materials are important only to the extent that they shed light on ambiguities in the statutes". Merrill v. United States, 105 F.Supp. 379, 382, 122 Ct.Cl. 566, 577 (1952).

In summary, plaintiff may receive up to a 12% annual premium, but not in excess of 12%. Defendant's interpretation is clear and unambiguous. Section 709(g)(1) is the controlling statute; it totally governs plaintiff's pay; there is no possible way he can receive, under the

---

4. 3 U.S.Code Cong. & Admin.News, p. 3318 (1968).

statute, more than the 12% premium he now receives.

Accordingly, defendant's motion for summary judgment is granted; plaintiff's cross motion for summary judgment is denied; and the petition is hereby dismissed.